LATHAM & WATKINS LLP
Michele D. Johnson (Bar No. 198298)
  *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: +1.714.540.1235

Colleen C. Smith (Bar No. 231216)
  *colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, California 92130
Telephone: +1.858.523.5400

Eric R. Swibel (*pro hac vice*)
  *eric.swibel@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: +1.312.876.7700

Whitney B. Weber (Bar No. 281160)
  *whitney.weber@lw.com*
Daniel R. Gherardi (Bar No. 317771)
  *daniel.gherardi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

*Attorneys for Defendants e.l.f. Beauty, Inc.,
Tarang P. Amin, and Mandy J. Fields*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE e.l.f. BEAUTY, INC. SECURITIES LITIGATION | CASE NO. 5:25-cv-02316-EKL |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | Date: February 11, 2026 |
| | Time: 10:00 A.M. |
| | Courtroom: Courtroom 7 – 4th Floor |
| | Judge: Hon. Eumi K. Lee |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   ARGUMENT ....................................................................................................2

    A.    Plaintiffs Fail to Plead an Actionable Misstatement or Omission ...........................2

        1.    None of the Challenged Statements Was False or Misleading....................2

            a.    The CW Allegations Are Unreliable and Cannot Be Credited...........................................................................................2

            b.    The CW Allegations Do Not Contradict the Challenged Statements ...................................................................................3

        2.    The Challenged Statements Are Not Actionable .......................................7

    B.    Plaintiffs Do Not Allege a Strong Inference of Scienter ....................................10

        1.    Plaintiffs Fail to Plead a Motive to Commit Fraud..................................10

        2.    Plaintiffs Fail to Plead a Strong Inference of an Intent to Defraud or Deliberate Recklessness .......................................................................12

        3.    The Nonfraudulent Inference Is Far More Compelling ............................14

    C.    Plaintiffs Fail to Plead the Revelation of Any Undisclosed "Truth" Caused Their Alleged Losses ..........................................................................................14

III.  CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Akimenko v. Mayorkas*,
2022 WL 1539519 (N.D. Cal. May 16, 2022) ................................................................ 11

*Bajjuri v. Raytheon Techs. Corp.*,
641 F. Supp. 3d 735 (D. Ariz. 2022) ............................................................................ 15

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
2024 WL 4505465 (N.D. Cal. Oct. 15, 2024) ................................................................ 5

*Cement Masons & Plasterers Loc. No. 502 Pension Fund v. Inmode Ltd.*,
2025 WL 2658224 (C.D. Cal. Sept. 12, 2025) .............................................................. 15

*City of Dearborn Heights Act 345 Pol. & Fire Ret. Sys. v. Align Tech., Inc.*,
2013 WL 6441843, (N.D. Cal. Dec. 9, 2013) ............................................................... 10

*City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*,
2024 WL 235183 (N.D. Cal. Jan. 22, 2024) ................................................................. 14

*City of Marysville Gen. Emps. Ret. Sys. v. NightHawk Radiology Holdings, Inc.*,
2011 WL 4584778 (D. Idaho Sept. 12, 2011) ................................................................ 6

*City of N. Miami Beach Police Officers' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ................................................................. 14

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ................................................................ 7

*DeKalb Cty. Pension Fund v. Roblox Corp.*,
2025 WL 948124 (N.D. Cal. Mar. 28, 2025) ............................................................ 3, 15

*Dolly v. GitLab Inc.*,
2025 WL 2372965 (N.D. Cal. Aug. 14, 2025) ..................................................... 1, 2, 8, 13

*Elec. Workers Pension Fund v. HP Inc.*,
2021 WL 1056549 (N.D. Cal. Mar. 19, 2021) ........................................................ 11, 12

*Ferreira v. Funko*,
2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ................................................................. 11

*Golub v. Gigamon Inc.*,
847 F. App'x 368 (9th Cir. 2021) ................................................................................... 9

*Gross v. AT&T Inc.*,
2021 WL 9803956 (S.D.N.Y. May 1, 2024) ................................................................... 3

*In re Concho Res. Inc.*,
2023 WL 2297425 (S.D. Tex. Feb. 23, 2023) ................................................................ 8

*In re Dot Hill Sys. Corp. Sec. Litig.*,
594 F. Supp. 2d 1150 (S.D. Cal. 2008) .......................................................................... 2

*In re Eargo, Inc. Sec. Litig.*,
   2023 WL 5663154 (N.D. Cal. Aug. 31, 2023), *aff'd sub nom.*, *Cai v. Eargo, Inc.*, 2025 WL 66041 (9th Cir. Jan. 10, 2025) ................................................................... 10

*In re Enovix Sec. Litig.*,
   2024 WL 349269 (N.D. Cal. Jan. 30, 2024) .......................................................................... 13

*In re Fusion-io, Inc. Sec. Litig.*,
   2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ............................................................................ 8

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
   2021 WL 12327975 (C.D. Cal. Aug. 30, 2021) ....................................................................... 4

*In re Intel Corp. Sec. Litig.*,
   2023 WL 2767779 (N.D. Cal. Mar. 31, 2023) .......................................................................... 8

*In re Leapfrog Enter., Inc. Sec. Litig.*,
   200 F. Supp. 3d 987 (N.D. Cal. Aug. 2, 2016) ........................................................................ 8

*In re Lexar Media, Inc. Sec. Litig.*,
   2005 WL 1566534 (N.D. Cal. July 5, 2005) .................................................................. 3, 4, 15

*In re Lucid Grp., Inc. Sec. Litig.*,
   2024 WL 3745605 (N.D. Cal. Aug. 8, 2024) ......................................................................... 10

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022) ................................................................................................. 15

*In re Philip Morris Int'l Inc. Sec. Litig.*,
   89 F.4th 408 (2d Cir. 2023) .................................................................................................... 9

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
   836 F. Supp. 2d 1 (D. Mass. 2011), *aff'd*, 669 F.3d 68 (1st Cir. 2012) ................................... 7

*In re Solarcity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) .................................................................................. 10

*In re SolarEdge Techs., Inc. Sec. Litig.*,
   2024 WL 4979296 (S.D.N.Y. Dec. 4, 2024) ........................................................................... 5

*In re Twitter, Inc. Sec. Litig.*,
   506 F. Supp. 3d 867 (N.D. Cal. 2020) ....................................................................... 4, 11, 14

*In re Verisign, Inc., Deriv. Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................................................ 11

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................................ 10

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ........................................................................................... 9, 14

*Lu v. Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019) .................................................................................. 7

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................................... 11, 12

*Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*,
    2021 WL 6101391 (9th Cir. Dec. 21, 2021) .................................................................. 6

*Ng v. Berkeley Lights, Inc.*,
    2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ................................................................ 10

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) (Opp. ) ......................................................................... 12

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
    2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ............................................................ 12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) ....................................................................................................... 9

*Paciga v. Invuity Inc.*,
    2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) ............................................................ 13

*Plumley v. Sempra Energy*,
    2017 WL 2712297 (S.D. Cal. June 20, 2017) ............................................................... 4

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ................................................................................... 12

*Reidinger v. Zendesk, Inc.*,
    2021 WL 796261 (N.D. Cal. Mar. 2, 2021) .................................................................. 5

*Ret. Trust v. RH, Inc.*,
    302 F. Supp. 3d 1028 (N.D. Cal. 2018) ....................................................................... 5

*Robeco Capital Growth Funds SICAV v. Peloton Interactive, Inc.*,
    665 F. Supp. 3d 522 (S.D.N.Y. 2023), *aff'd in relevant part*, 153 F.4th 288
    (2d Cir. 2025) ................................................................................................................ 7

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ....................................................................................... 5

*Simon v. Am. Power Conversion Corp.*,
    945 F. Supp. 416 (D.R.I. 1996) .................................................................................... 6

*Sneed v. Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025) .......................................................................... 4, 8, 14

*Studen v. Funko*,
    2024 WL 2209686 (W.D. Wash. May 16, 2024) ........................................................ 14

*Vaughan v. Wardhaugh*,
    2025 WL 251694 (N.D. Cal. Jan, 21, 2025) .............................................................. 8, 9

*Welgus v. TriNet Group*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) .............................................................. 4

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ....................................................................................................... 2

**STATUTES**

15 U.S.C. § 78u-5(i)(1) ................................................................................................................ 8

# GLOSSARY OF DEFINED TERMS

The following terms are used in this memorandum:

| Term | Definition |
|---|---|
| ¶_ | Citation to the paragraph numbers in Plaintiffs' Complaint |
| 3Q24 | e.l.f.'s third quarter of fiscal year 2024 (October 1, 2023 through December 31, 2023) |
| 4Q24 | e.l.f.'s fourth quarter of fiscal year 2024 (January 1, 2024 through March 31, 2024) |
| 1Q25 | e.l.f.'s first quarter of fiscal year 2025 (April 1, 2024 through June 30, 2024) |
| 2Q25 | e.l.f.'s second quarter fiscal year 2025 (July 1, 2024 through September 30, 2024) |
| 3Q25 | e.l.f.'s third quarter fiscal year 2025 (October 1, 2024 through December 31, 2024) |
| Amin | Defendant Tarang P. Amin, e.l.f.'s CEO |
| App. A | Appendix A to Defendants' Motion, listing in tabular format statements challenged by Plaintiffs in their Complaint (Dkt. 58-1) |
| Class Period | February 7, 2024 – February 6, 2025, inclusive |
| Challenged Statement(s) | Statements Plaintiffs allege to be false or misleading in ¶¶164-65, 173-74, 180, 187-88, 191-92, 199-200, 203-05, 217, 220-21 of their Complaint |
| Complaint | Plaintiffs' Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws, filed July 23, 2025 (Dkt. 55) |
| CW(s), including CW1, CW2, CW3, and CW4 | Confidential Witnesses, as alleged by Plaintiffs in the Complaint, ¶¶45-48 |
| Defendants | e.l.f. and Individual Defendants |
| e.l.f. or the Company | Defendant e.l.f. Beauty, Inc. |
| Ex(s). or Exhibit(s): | Exhibits attached to the Declaration of Whitney B. Weber in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint (Dkt. 59) |
| Fields | Defendant Mandy J. Fields, e.l.f.'s CFO |
| FY24 | FY24 runs from April 1, 2023 through March 31, 2024 |

| Term | Definition |
|---|---|
| FY25 | FY25 runs from April 1, 2024 through March 31, 2025 |
| Individual Defendants | Amin and Fields |
| Inventory Turn | The speed at which e.l.f. sells its products to retailers, ¶86 n.6 |
| Motion or Mot. | Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (Dkt. 58) |
| Plaintiffs | Boston Retirement System and Metropolitan Employee Benefit System |
| PSLRA | The Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77k, *et seq.* |
| RJN | Defendants' Request for Judicial Notice in Support of Motion to Dismiss Consolidated Class Action Complaint for Violations of the Federal Securities Laws (Dkt. 60) |
| YoY | Year-over-year |

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 5:25-CV-02316-EKL

## I.      INTRODUCTION

Plaintiffs have not come close to satisfying the high burden of pleading securities fraud. Fundamentally, Plaintiffs claim that throughout the Class Period, Defendants told "investors that demand was robust and as strong as ever" when it supposedly was not.  Opp. at 1.  But this theory ignores Plaintiffs' own allegations, as well as Defendants' disclosures.  To start, Plaintiffs' allegations are based almost entirely upon unreliable CWs, none of whom Plaintiffs allege had insight into Company-wide demand for e.l.f.'s products.  More importantly, none of the CW allegations contradicts the Challenged Statements.  Plaintiffs' Opposition focuses primarily on e.l.f.'s statements that its inventory was growing in part to meet "strong" consumer demand, asserting that, in reality, consumer demand had declined.  But Plaintiffs acknowledge that demand for e.l.f. products had *not* declined—just the opposite, sales grew YoY throughout the Class Period. And while Plaintiffs argue that Defendants purportedly knew that sales were "not as strong as the previous year," their own allegations show that was *exactly what Defendants told investors to expect*.  Indeed, Plaintiffs admit that demand was reflected in e.l.f.'s quarterly sales guidance, which forecasted YoY sales increases, but at lower *growth rates* than pre-Class Period.  And as Plaintiffs concede, Defendants' forecasts proved correct, as e.l.f. *achieved* its guidance every quarter in the Class Period.  These concessions put to rest any notion that Defendants' statements were false or misleading.  And in any event, many of the Challenged Statements are not actionable as a matter of law, which independently requires dismissal.

Nor do Plaintiffs plead particularized facts showing a strong inference of scienter. Plaintiffs try to fabricate a motive to defraud by pointing to insider stock transactions—but they admit those transactions were *nondiscretionary* trades made to cover taxes when previous equity grants vested, which—as a matter of law—add nothing to the scienter calculus.  Plaintiffs are thus left with allegations that Defendants had access to unspecified information, or that sales were "critical" to e.l.f.'s operations.  But, as this Court has explained, such "generic allegations fail to demonstrate that Individual Defendants knowingly made false or misleading statements." *Dolly v. GitLab Inc.*, 2025 WL 2372965, at *14 (N.D. Cal. Aug. 14, 2025) (Lee, J.).

Finally, Plaintiffs do not plead loss causation. Plaintiffs rely exclusively on guidance updates and earnings results, none of which corrected any Challenged Statement. Instead, Defendants provided investors with timely, accurate updates about e.l.f.'s business.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Plead an Actionable Misstatement or Omission

#### 1.    None of the Challenged Statements Was False or Misleading

Plaintiffs argue that all of the Challenged Statements—including that e.l.f. was building inventory to meet "strong" consumer demand, that Defendants expected sales would continue to grow, and e.l.f.'s financial guidance predicting 28%-30% YoY sales growth in FY25—were false, relying almost exclusively on CW allegations that there was instead "decreased demand" for e.l.f.'s products. *See* Opp. at 2-3, 8-14. This argument fails for two reasons: (1) Plaintiffs' cited CW allegations are unreliable and thus should be disregarded; and (2) none of the CW allegations renders the Challenged Statements false.

##### a.    *The CW Allegations Are Unreliable and Cannot Be Credited*

Plaintiffs argue that the Court should credit their CW allegations as reliable because the Complaint describes the CWs' "job descriptions, responsibilities, [and] employment timeframes." Opp. at 12-13. Yet for CW1, CW2, and CW4, Plaintiffs do not even include "job titles," much less other "employment information with ample detail" that would "make apparent [their] position within" the Company. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009); *see also Gitlab*, 2025 WL 2372965, at *10, 14; ¶¶45-46, 48. Indeed, Plaintiffs themselves appear to be confused about their allegations, as they claim CW4 was an "ELF employee[]," Opp. at 13, but their Complaint says CW4 was a "consultant." ¶48. And the descriptions Plaintiffs do include (*e.g.*, a "member of E-commerce division," an "account executive," or part of "sales team") are too vague to "discern whether the [CW] likely knows what he/she is talking about." *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1162-63 (S.D. Cal. 2008).

In fact, if anything, Plaintiffs' allegations only show that none of the CWs was "in a position to be personally knowledgeable of the information alleged." *Zucco*, 552 F.3d at 996. Plaintiffs claim that "collectively, the CWs explain that [e.l.f.] experienced flagging demand in

Summer 2024." Opp. at 13. But *none* of the CWs allegedly had Company-wide insight into demand for e.l.f.'s products. CW1 allegedly managed only "digital" sales of two immaterial product brands for the first half of the Class Period—neither of which Plaintiffs alleges was material. ¶45. CW2 simply "ran events" and "tracked sales" of some products at certain retail stores, while CW3 was an "account manager" who sold limited products to some stores for part of the Class Period. ¶47. And while CW4 is alleged to have been "involved with sales to various retailers," Plaintiffs do not describe *for which products* she was "involved," what that "involvement" entailed, or whether that "involvement" reflected Company-wide sales. ¶48. None of these CWs was "positioned to know" what *overall demand* for e.l.f. products looked like during the Class Period. *See DeKalb Cty. Pension Fund v. Roblox Corp.*, 2025 WL 948124, at *4 (N.D. Cal. Mar. 28, 2025) (without "stronger factual basis to conclude the confidential witnesses had knowledge of actual metrics contradicting the company's public statements," no falsity); *see also Gross v. AT&T Inc.*, 2021 WL 9803956, 6, n.15 (S.D.N.Y. May 1, 2024) ("store manager[s]" and "sales associate[s]" do not have "companywide perspective"). The CW allegations should thus be disregarded entirely.

### b.     *The CW Allegations Do Not Contradict the Challenged Statements*

Even if the CW allegations could be credited, none provides "an adequate basis for [finding] the [Challenged] [S]tatements were false." *See In re Lexar Media, Inc. Sec. Litig.*, 2005 WL 1566534, at *3 (N.D. Cal. July 5, 2005).

***The Inventory-Growth Statements.*** Plaintiffs' Opposition focuses heavily on Defendants' statements that e.l.f. was building inventory in part to "support strong consumer demand." *See* App. A at 1-4, 6, 9, 12-15 (e.l.f. also attributed increased inventory to e.l.f. acquiring a new skincare company and changing when it took ownership of products shipping from China, which Plaintiffs do not dispute). Plaintiffs argue that these statements were false because, based upon CW accounts, inventory was actually increasing because of an "inability to move product," as "demand had [] cratered." *See* Opp. at 10-13. Plaintiffs' arguments fail for three reasons.

*First*, as a threshold matter, Plaintiffs concede that demand did *not* crater, as they now say. Just the opposite, Plaintiffs acknowledge that e.l.f.'s sales *grew* YoY throughout the Class Period, with FY25 sales increasing 28% YoY. *See* Opp. at 2, 13 (e.l.f. met FY25 guidance with YoY sales growth of 28%); Mot. at 6-7.

*Second*, and relatedly, although Plaintiffs argue that the CWs suggested that Defendants "had access to complete and accurate sales data," Opp. at 11, they do not point to any "specific facts" showing how this unspecified sales data contradicted the Challenged Statements. *Welgus v. TriNet Group*, 2017 WL 6466264, at *10 (N.D. Cal. Dec. 18, 2017); *see also In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 886 (N.D. Cal. 2020). At most, Plaintiffs point to two metrics that they claim "reflected lower demand": (1) that e.l.f.'s inventory growth rate exceeded its sales growth rate; and (2) Inventory Turn slowed. Opp. at 10-11. But as Plaintiffs admit, both metrics were publicly disclosed. Opp. at 11. Because this information was known to investors—who are "presumed to carefully scour all the fine print," *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1132 (9th Cir. 2025)—neither metric can form the basis of Plaintiffs' fraud claim. *See In re Genius Brands Int'l, Inc. Sec. Litig.*, 2021 WL 12327975, at *9 (C.D. Cal. Aug. 30, 2021). And in any event, neither metric "directly contradicted" the inventory-growth statements. *See Twitter*, 506 F. Supp. 3d at 886. Just the opposite, while Plaintiffs argue the Inventory Turn metric showed e.l.f. had an "inability to move" its products, they admit that metric actually showed e.l.f. was selling through its inventory *more than one-and-a-half times per quarter*. Opp. at 10-11; ¶86, n. 6 ("an inventory turn of [1.54] mean[t] that [e.l.f.] was able to sell *through* roughly [1.54] instances of its average inventory on hand every quarter").[1] In other words, there *was* strong demand for e.l.f. products. *See Plumley v. Sempra Energy*, 2017 WL 2712297, at *8 (S.D. Cal. June 20, 2017) (dismissing where "Plaintiffs' own allegations contradict their claims"); *Lexar*, 2005 WL 15666534, at *3 (inventory increase did "not signify by itself that sales were decreasing at the time of the rise").

*Finally*, Plaintiffs' allegations that there were "forecast meetings" starting in "Summer 2024" where attendees discussed that sales were "not as strong as the previous year," Opp. at 5,

---

[1] Indeed, e.l.f. was selling through its inventory each quarter even as it added ~$50 million of inventory related to it acquiring a new skincare company and implementing an accounting change that meant it took ownership of inventory from China earlier—which Plaintiffs do not dispute.

are entirely consistent with Defendants' disclosures.  Starting with the February and May 2024 statements, Plaintiffs concede that *none* of the CWs states that demand at that time was anything but robust.  For good reason:  in February 2024, e.l.f. had just posted phenomenal 3Q24 YoY sales growth of 85%, and in May 2024, reported 4Q24 growth of 70% YoY.  *See* Mot. at 3-4.  Nor does the fact that, by Summer 2024, e.l.f.'s sales growth *rate* was "not as strong as the previous year," as CW4 claims, render the August or November 2024 statements false.  Instead, Defendants told investors to expect growth, *but at decelerating rates*.  That is why Plaintiffs' repeated argument that Defendants attributed inventory to "increased demand," Opp. at 2, 5, 9-11, 13, 21, is wrong.  In August 2024, e.l.f. told investors it expected FY25 sales would grow 25%-27% YoY, or approximately *half* of the 77% YoY growth it experienced in FY24, while acknowledging that customers were becoming more "choosy."  *See* Mot. at 12-14.  And in November, Defendants slightly updated e.l.f.'s guidance while specifically disclosing they had seen "softening" demand trends—and thus forecasted that growth over the next two quarters would be well below e.l.f.'s full FY25 guidance.  Opp. at 12; Mot. at 7.  The CW allegations are thus "consistent with Defendants'" disclosures.  *See Bhangal v. Hawaiian Elec. Indus., Inc.*, 2024 WL 4505465, at *11-13 (N.D. Cal. Oct. 15, 2024); *Reidinger v. Zendesk, Inc.*, 2021 WL 796261, at *7 (N.D. Cal. Mar. 2, 2021) (no falsity where the allegations were "plausibly consistent" with challenged statements).

Plaintiffs' cited cases show precisely what Plaintiffs' allegations lack.  Opp. at 14 (citing *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016); *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Trust v. RH, Inc.*, 302 F. Supp. 3d 1028, 1042 (N.D. Cal. 2018)).  In *Arena*, a drug company said animal studies supported a drug's safety and likelihood of approval, despite knowing of contradictory studies and that the FDA raised safety concerns, which seriously risked the drug's approval.  840 F.3d at 705-08.  And in *RH*, the court found misleading rosy statements about a new product line where plaintiffs pled facts that "not a single piece of [that] furniture [line] was in stock," and marketing photo shoots used fabricated furniture.  302 F. Supp. 3d at 1040, 44-45.[2]  By contrast here, Defendants disclosed accurate financial results accompanied by clear

---

[2] Two other cases upon which Plaintiffs rely, Opp. at 9, likewise do not support them.  In *In re SolarEdge Technologies, Inc. Securities Litigation*, the court found that the company's statements

guidance that future sales would continue to grow, reflecting continued demand but at a slower rate. Ex. 11 at 5; Ex. 9 at 10; Ex. 16 at 4. And e.l.f.'s forecast proved true. Ex. 17 at 1.

***Sales and Market-Share Growth Statements.*** Plaintiffs next argue Defendants' statements that there was "growth to be had" and they were "bullish in [their] ability to continue to drive" market share as e.l.f.'s "business [wa]s strong" at retailers (App. A at 5, 7-8, 16-17) were false because the CWs claimed "sales data" showed that "growth had slowed." Opp. at 13-14. As an initial matter, Plaintiffs do not allege e.l.f. did *not* gain market share—rightly so, since e.l.f. *increased* its market share every quarter of the Class Period. Exs. 5 at 4, 9 at 4, 11 at 4, 16 at 4. Moreover, there is no dispute that e.l.f. *continued* to grow, achieving its sales guidance with YoY growth *every quarter*, while accurately telling investors to expect that its growth *rate* would slow. Mot. at 6-7. To that end, while Plaintiffs say that "Ulta stopped ordering additional inventory from ELF," Opp. at 14 (citing ¶¶177-78, 182), their cited allegations say nothing of the sort. Instead, CW2 alleged e.l.f. was "not seeing the same *level* of growth at Ulta" as in "previous years"—just as e.l.f. predicted publicly—not that Ulta stopped ordering additional e.l.f. inventory. ¶¶177-78, 182. And while CW1 claimed Ulta did not order one specific type of product for its website, CW1 did *not* claim that Ulta stopped ordering products altogether (or even that it stopped ordering that product for its brick-and-mortar stores). ¶178. Rather, Plaintiffs admit that Ulta remained one of e.l.f.'s largest customers. ¶84; *see also Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391, at *1 (9th Cir. Dec. 21, 2021) (none of the CWs "made statements directly at odds with [defendant's] public" statements); *City of Marysville Gen. Emps. Ret. Sys. v. NightHawk Radiology Holdings, Inc.*, 2011 WL 4584778, at *8 (D. Idaho Sept. 12, 2011) ("facts alleged by CW# 1 . . . do not contradict or otherwise provide concrete numbers contrary to [defendant's] statements").

***November 2024 Guidance Statement.*** Finally, Plaintiffs argue that e.l.f.'s increased FY25 sales guidance in November 2024 (projecting 28%-30% YoY growth, an increase from 25%-27%

that its distributors' inventory increased were misleading because the company failed to disclose it had been engaged in improper "channel stuffing"—*i.e.*, unsustainably forcing customers to take unneeded products at the end of each quarter. 2024 WL 4979296, at *2, 10 (S.D.N.Y. Dec. 4, 2024); *see also Simon v. Am. Power Conversion Corp.*, 945 F. Supp. 416, at 432-33 (D.R.I. 1996) (finding falsity only where plaintiffs alleged particularized facts showing "swell in inventor[y]" *due to returns* of concealed defective products). Plaintiffs do not allege anything similar.

YoY growth) was false.  Opp. at 12, 14; *see* App. A at 10-11.  Plaintiffs' argument is perplexing, as they admit that e.l.f. met that guidance.  Opp. at 1, 2, 12.  There can, of course, be no falsity where the company "concededly grew as projected." *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *15 (N.D. Cal. Dec. 17, 2019); *Robeco Capital Growth Funds SICAV v. Peloton Interactive, Inc.*, 665 F. Supp. 3d 522, 541 (S.D.N.Y. 2023), *aff'd in part*, 153 F.4th 288 (2d Cir. 2025) (no falsity where "performance exceeded [] sales guidance").

Plaintiffs thus change tack, arguing that the "reason" Defendants provided "for the guidance raise" was "misleading."  Opp. at 14.  Plaintiffs say Defendants attributed that raise to "stronger than expected sales," while sales were purportedly "below internal expectations." *Id*. But this fails, too.  As Plaintiffs acknowledge, Defendants explained that e.l.f. was slightly raising its FY25 guidance because of "the outperformance *in Q2*." App. A at 11.  That made sense:  e.l.f.'s 2Q25 (July – September 2024) sales grew 40% YoY, far above what they had publicly projected ("slightly above" 25%-27%). *See* Mot. at 5.  So, as Fields explained, expectations for the full year needed to be adjusted to reflect that reality.  App. A at 11.  And that e.l.f.'s sales were purportedly below internal projections does not render the guidance false—e.l.f. did not disclose *internal* targets, it announced sales *guidance*. *See Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276-78 (N.D. Cal. 2019) (allegations that "bear no connection" to statement do not render it false).  Indeed, as courts frequently recognize, internal targets are meant to be "set high" to "encourage growth" within the company. *In re Smith & Wesson Holding Corp. Sec. Litig.*, 836 F. Supp. 2d 1, 10 (D. Mass. 2011), *aff'd*, 669 F.3d 68 (1st Cir. 2012).

Because Plaintiffs do not plead any particularized fact that any of the Challenged Statements were false, the Complaint should be dismissed.

### 2.    The Challenged Statements Are Not Actionable

***PSLRA Safe Harbor.***  Plaintiffs argue that none of the forward-looking statements identified in the Motion is protected by the PSLRA safe harbor because Defendants purportedly did not explain what portion of the statements were forward-looking.  Opp. at 15.  Plaintiffs miss the mark.  Defendants expressly identified fifteen statements that "concern what Defendants

'expected' or 'believed' would happen in the future," pointing to exemplary language.[3]  Mot. at 15-16 (citing App. A at 1-7, 9, 10-16).  Moreover, of the fifteen statements, Plaintiffs do not address thirteen of them (App. A at 1-2, 4-6, 10-14, 16), and thus waive any challenge to those statements.  *Vaughan v. Wardhaugh*, 2025 WL 251694, at *1 (N.D. Cal. Jan, 21, 2025).  For the two statements Plaintiffs do address, Plaintiffs argue they are not forward-looking because they concern reasons for e.l.f.'s "*current* increased inventory levels or decisions to raise guidance." Opp. at 15-16 (discussing App. A at 3, 15).  But "the context surrounding the statement[s]" shows that they are forward-looking.  *Sneed*, 147 F.4th at 1131.  First, for Fields's statement that "we have been increasing that inventory position to support the demand," App. A at 3, Plaintiffs strategically omit the rest of her statement: "we're seeing and certainly have room to support ***even further demand and upside potential should that come to fruition*** in our inventory."  App. A. at 3.  And Amin's statement that "we built up inventory ***to be able to meet*** the strong demand that we're seeing," App. A at 15, "relat[es] to future expectations and performance" about needing inventory to meet future consumer demand.  *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *11 (N.D. Cal. Feb. 12, 2015); *see also In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1005 (N.D. Cal. Aug. 2, 2016) (statement "that the inventory was going to move more quickly over the next two or three months" forward-looking); 15 U.S.C. § 78u-5(i)(1).

Plaintiffs next argue that the safe harbor protects *none* of the statements because e.l.f.'s cautionary language was "boilerplate."  Opp. at 16.  But where, as here, cautionary language warns of "Plaintiffs' exact theory of falsity," that language is "far from boilerplate."  *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *12 (N.D. Cal. Mar. 31, 2023).  Indeed, e.l.f. warned investors about the very topics about which Plaintiffs complain, including that "historical growth may not be indicative of our future growth," that "[d]emand for products . . . can change significantly," and that it "may be difficult to accurately forecast demand and determine appropriate levels of

---

[3] The Ninth Circuit does not require that Defendants specify what portion of each statement is forward-looking.  *See GitLab*, 2025 WL 2372965, at *7-8 (court identified which portions of statements were forward-looking).  Plaintiffs' only support for this proposition is an unhelpful out-of-circuit report and recommendation where defendants attached a spreadsheet collecting allegedly inactionable statements without any explanation.  *In re Concho Res. Inc.*, 2023 WL 2297425, at *13 (S.D. Tex. Feb. 23, 2023).  By contrast, here, Defendants reference specific quotes and categories of statements that are forward-looking.  Mot. at 16.

product." *See* Ex. 1 at 12-13, 18; Mot. at 3-4. And Plaintiffs' contention that Defendants made the statements with "actual knowledge" of falsity, Opp. at 16, fails because their allegations do not show scienter, much less the more difficult standard of actual knowledge. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 n.18 (9th Cir. 2002); *infra*, II.B.

***Opinions.*** Plaintiffs claim that only one of the four statements identified by Defendants (Mot. at 17) is an opinion, arguing that the remaining three did not use the phrase "we believe." Opp. at 16. But "language like 'we believe' or 'we think'" is not necessary to "render a statement one of opinion"—an opinion is anything that reflects an "inherently subjective [] assessment." *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015)). All four of the identified statements are quintessential opinions about what Defendants subjectively believed. *See* App. A at 1, 14 ("we believe"); *id.* at 7 ("we remain quite bullish"); *id.* at 8 ("continue to think").

Plaintiffs next argue that the statements are actionable because Defendants omitted information that undermined their opinions, asserting Defendants knew (but concealed) "declining demand." Opp. at 16-17. This is wrong, too. As Plaintiffs concede, e.l.f.'s sales guidance reflected demand "trends." Opp. at 12. And they admit that (1) e.l.f.'s FY25 guidance, while predicting that growth rates would decelerate over time, still reflected "strong demand"; (2) e.l.f. achieved its FY25 guidance; and (3) e.l.f. had "positive sales growth" throughout the Class Period. *Id*. In other words, Defendants were right (even in hindsight) to believe that e.l.f. would continue to grow, albeit at a slower rate. *See Golub v. Gigamon Inc.*, 847 F. App'x 368, 373 (9th Cir. 2021) (that company would continue to face challenges to grow revenue found to be nonactionable opinion).

***Puffery.*** Plaintiffs do not specifically address the eleven puffery statements and thus forfeited any argument that they are actionable. App. A. at 1-2, 4-5, 7-9, 13, 15-17; *Vaughan*, 2025 WL 251694, at *1. Instead, Plaintiffs generally argue *all* the Challenged Statements are actionable because they pertained to "important metrics" or are "capable of objective verification." Opp. at 17. But statements about seeing "strong" demand, and Defendants' "confidence" that e.l.f. could "drive strong net sales" (App. A at 1-2, 4-5, 7-9, 13, 15-17) are not objectively verifiable "concrete facts," but rather generalized assertions of corporate optimism. *Compare* Opp. at 27

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 5:25-CV-02316-EKL

(citing *In re Lucid Grp., Inc. Sec. Litig.*, 2024 WL 3745605, at *20 (N.D. Cal. Aug. 8, 2024) (involving "concrete" statements about core business)) *with Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *10 (N.D. Cal. Feb. 20, 2024) (statements about company "experiencing 'strong' demand for both new and existing customers" nonactionable); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017) ("We are actually extremely bullish for the US markets" nonactionable); *City of Dearborn Heights Act 345 Pol. & Fire Ret. Sys. v. Align Tech., Inc.*, 2013 WL 6441843, at *11-12 (N.D. Cal. Dec. 9, 2013) ("strong" quarter and "growth" nonactionable). Courts routinely dismiss nearly identical statements. *See* Mot. at 18.

**B.      Plaintiffs Do Not Allege a Strong Inference of Scienter**

**1.      Plaintiffs Fail to Plead a Motive to Commit Fraud**

***Stock Sales Nondiscretionary.***      Plaintiffs argue that Defendants had "motive to mislead investors," pointing to Class Period stock sales by Amin and Fields. *See* Opp. at 4, 18-20. But those were nondiscretionary trades made "solely to satisfy tax or other government withholding obligations" that arose when previously granted equity awards vested. Exs. 14-15 (2021 grants vested in 2024, with shares withheld to satisfy taxes on award).[4] Plaintiffs do not dispute this— and by not opposing Defendants' RJN, they concede that the Court should consider Defendants' Exhibits (including the Forms 4) in adjudicating the Motion. Opp. at 20. Instead, Plaintiffs ask that the Court ignore that the transactions were nondiscretionary because they (misleadingly) did not include that fact in their Complaint. Opp. at 21. But as their own authority explains, Plaintiffs cannot allege purportedly suspicious stock sales—information about which necessarily came from Defendants' Forms 4 (RJN at 7; Exs. 14-15)—while omitting facts about those transactions that "doom" their claims. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); RJN at 4. And, as numerous courts in this Circuit have explained, nondiscretionary trades made to cover taxes do ***not*** support an inference of scienter. *See, e.g., In re Eargo, Inc. Sec. Litig.*, 2023 WL 5663154, at *1 (N.D. Cal. Aug. 31, 2023), *aff'd sub nom., Cai v. Eargo, Inc.*, 2025 WL 66041

---

[4] Under e.l.f.'s equity incentive award plans, e.l.f. automatically satisfies tax withholding obligations by "withholding shares of Common Stock otherwise issuable" to the employee or instructing a broker "to sell shares . . . and submit the proceeds of such sale to the Company" cover such tax obligations. *See* e.l.f. Beauty, Annual Report (Form 10-K) at Ex. 10.27 (May 26, 2022).

(9th Cir. Jan. 10, 2025) (sales made to cover tax obligations do not support scienter); *Elec. Workers Pension Fund v. HP Inc.*, 2021 WL 1056549, at *7 (N.D. Cal. Mar. 19, 2021) (same).

Even if Amin's and Fields's nondiscretionary trades were relevant to the scienter analysis (they are not), Plaintiffs do not allege facts suggesting that the transactions were suspicious.

***Amount and Percentage.*** Plaintiffs improperly group Amin's and Fields's sales, claiming their amounts were "suspicious." Opp. at 19 ("the Individual Defendants *collectively* sold over 103,000 shares and repeated over $17 million in a single day"). But "even large stock sales, without more, cannot give rise to a strong inference of scienter." *In re Verisign, Inc., Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007). That is particularly true here, where the transactions were nondiscretionary trades to cover taxes. *See* Opp. at 20; *Twitter*, 506 F. Supp. 3d at 890.

Plaintiffs next argue that both Amin and Fields decreased their holdings throughout the Class Period. Opp. at 20. This fails, too. Plaintiffs do not cite a *single* allegation from their Complaint detailing what percentage of shares Amin or Fields purportedly sold. *See Ferreira v. Funko*, 2021 WL 880400, at *29 (C.D. Cal. Feb. 25, 2021); *see also Akimenko v. Mayorkas*, 2022 WL 1539519, at *4 (N.D. Cal. May 16, 2022) (cannot amend complaint through opposition). And while Plaintiffs take issue with the fact that Defendants cite post-Class Period Forms 4 to show that the Individuals' holdings remained constant or increased, Opp. at 20, they do not dispute that those Forms 4 are the closest-in-time forms to the end of the Class Period. Ex. 14 at 11; Ex. 15 at 6. Thus, the fact that Amin's and Fields's holdings temporarily decreased in the middle of the Class Period says nothing about whether the transactions were suspicious when "viewed as a whole." *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008).

***Timing and Trading History.*** Plaintiffs argue that Amin's and Fields's April 18, 2024 transactions were suspiciously timed because they occurred at the "zenith" of e.l.f.'s Class Period stock price ($168). Opp. at 21. But this ignores that the sales were automatic, and therefore not "timed" at all. It also ignores that e.l.f.'s stock price was significantly higher at various other points during the Class Period. *See* Ex. 18 at 9-11 (March 1, 2017, price was $217; June 27, 2024, price was $218). Ex. 18 at 9-11. And, in any event, Plaintiffs' cited authority recognizes that even sales made near the peak of a Class Period stock price do not support a "strong inference" of

scienter. *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003) (Opp. at 21). More importantly, Plaintiffs do not tie the trades to any of Defendants' Challenged Statements. To survive dismissal, Plaintiffs must identify "contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler*, 540 F.3d at 1066. This requires that Plaintiffs "link" the stock sales to the Challenged Statements. *See Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *36, 42 (C.D. Cal. Apr. 14, 2015) (sales must "be related to the challenged statements"). Plaintiffs do not even try to do so; instead, they point to statements made *months after* April 2024. App. A. at 3 (Field's May 22, 2024 statement on the 4Q34 Earnings Call), *id.* at 5 (Amin's June 30, 2024 statement made during the Barrons Interview).

Likewise, Plaintiffs err in contending that the April 18, 2024 sales were suspicious because they "sold" nearly double the amount of shares they had sold on a single day in prior years. Opp. at 20. Again, the trades were automatic based on the vesting of restricted stock awards that had been granted and announced *three years* earlier, and which required Defendants to meet significant performance milestones over that time. Exs. 14-15. This is not suspicious. *HP*, 2021 WL 1056549, at *7 ("stock sales" made to "satisfy tax obligation" not suspicious).

### 2.     Plaintiffs Fail to Plead a Strong Inference of an Intent to Defraud or Deliberate Recklessness

Without any plausible motive to defraud, Plaintiffs rely on generalized and vague theories of fraud, none of which meets their heavier burden of pleading scienter. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1107 (9th Cir. 2021).

***Plaintiffs' Generic CW Allegations.*** First, Plaintiffs—relying on CW allegations—allege that Amin (but not Fields) "attended monthly forecast meetings" where "negative sales trends" were discussed, such that Defendants must have been "aware that the [Challenged Statements] were false and misleading." Opp. at 18. Plaintiffs' Opposition confirms the opposite. With respect to the February through June 2024 statements (App. A at 1-5), Plaintiffs do not point to *any* allegation suggesting that "negative" trends had been discussed by the time of those Challenged Statements. *See* Opp. at 18. For good reason: it is undisputed that e.l.f. posted YoY sales growth

of 71% in 4Q24 (January – March 2024) and 50% in 1Q25 (April – June 2024).  *See* Mot. at 4.

Plaintiffs' arguments about the August statements fare no better.  Plaintiffs point to CW4's allegation that Amin attended meetings during "Summer 2024," during which the attendees purportedly discussed "inventory and how to move it," as growth "declined from the previous year."  Opp. at 18.  But Plaintiffs do not explain how these "generic allegations" establish Amin's *contemporaneous* knowledge that any of the Challenged Statements was false or misleading when made.  *Gitlab*, 2025 WL 2372965, at *14.  Just the opposite, as Plaintiffs acknowledge, during the very next earnings call on August 8, 2024:  (1) Amin reported that cosmetic "consumers [were] being more choosy"; and (2) Defendants provided updated guidance projecting that e.l.f.'s sales growth rates would be significantly lower than prior quarters.  *See* Ex. 9 at 10; Opp. at 3, 6.

Nor do the CW allegations plead a strong inference of scienter with respect to the November statements.  Plaintiffs argue that CW4 purportedly reported that "by mid-October" the "C-Suite" was "aligned" that "new products did not match the Company's internal forecasts or expectations, and their sales were not comparable to previous years."  Opp. at 18.  Missing, however, is any explanation as to how "*internal* forecasts" about unspecified products compared to Defendants' *public* statements.  *See id.*; *see also Paciga v. Invuity Inc.*, 2019 WL 3779694, at *6 (N.D. Cal. Aug. 12, 2019).  Nor was the fact that sales growth rates were "not comparable to previous years" hidden:  during the November 6, 2024 earnings call, Defendants told investors they were seeing "softer than expected" demand, and continued to project decelerating growth rates.  *See* Ex. 11 at 5; Mot. at 22.  Plaintiffs' "scienter allegations suffer from the basic underlying problem that the complaint fails to connect the dots to show that [Defendants] said one thing while knowing (or being deliberately reckless about not knowing) that the reality at that time differed in a material way."  *In re Enovix Sec. Litig.*, 2024 WL 349269, at *13 (N.D. Cal. Jan. 30, 2024).

***Access to Information.***  Plaintiffs next argue Defendants had "access to information." Opp. at 22.  But "[a]ccess to information by itself, does not establish" that Defendants knew their statements were false or misleading.  *GitLab*, 2025 WL 2372965, at *14.  Instead, Plaintiffs must allege with particularity that Defendants knew of specific facts contradicting their statements.  *See id*.  Plaintiffs do not make this showing.  At most, they point to a "data visualization platform."

Opp. at 22. But they do not plead—much less in detail—the contents of what that data showed, or that Defendants actually accessed that information. *See Lipton*, 284 F.3d at 1036 ("plaintiffs do not allege with particularity any specific information showing that prescription data informed defendants that patient demand . . . was flat"); *see also Twitter*, 506 F. Supp. 3d at 888 (plaintiffs "do not describe with particularity the specific contents of" "daily summaries and periodic reviews of key metrics" that defendants supposedly received); *City of N. Miami Beach Police Officers' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *9 (S.D.N.Y. Jan. 21, 2021) (plaintiffs fail to allege "any specific information" contradicting statements).

***Core Operations.*** Finally, Plaintiffs fall back on the catch-all "core operations" theory of scienter. Opp. at 23. That says a lot. The core operations doctrine applies only in the "exceedingly rare and unusual case" where the court may "impute knowledge to the [Defendants] solely through their executive roles, without particularized allegations regarding their actual exposure to information." *Studen v. Funko*, 2024 WL 2209686, at *18 (W.D. Wash. May 16, 2024). And this doctrine applies only where "falsity is patently obvious." *Sneed*, 147 F.4th at 1134. Plaintiffs don't plead a single false statement—much less specific facts that "would have led [Defendants] to 'know' [the Challenged Statements] conveyed 'patently false' information." *Id*.

### 3.    The Nonfraudulent Inference Is Far More Compelling

Plaintiffs cannot "establish a strong inference of scienter because it is more probable" that Defendants believed the Challenged Statements were true. *Sneed*, 147 F.4th at 1134. Indeed, while Plaintiffs quibble with Defendants' use of "strong" demand, they do not dispute that Defendants received information that supported e.l.f.'s guidance—which e.l.f. achieved. Opp. at 2, 13. The only "cogent and compelling" inference is that Defendants acted non-fraudulently by providing "open and regular communication" to e.l.f.'s investors. *City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*, 2024 WL 235183, at *16 (N.D. Cal. Jan. 22, 2024).

### C.    Plaintiffs Fail to Plead the Revelation of Any Undisclosed "Truth" Caused Their Alleged Losses

Finally, Plaintiffs' loss-causation theory fails for two reasons. *First*, Plaintiffs argue that e.l.f.'s alleged "disclosures of poor financial results" were corrective because they revealed that

"demand had been slipping." Opp. at 23-24. But Plaintiffs do not allege—much less with particularity—how e.l.f.'s financial results corrected or revised its previous statements about continued customer demand. *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022). Nor can they: in both August 2024 and February 2025, e.l.f. announced quarterly results that *exceeded* what Defendants told investors to expect. *See* Mot. at 7 (August 2024: announced 1Q25 sales growth of 50%, above 20%-22% projection; February 2025: announced 3Q25 sales growth of 31%, above 16%-20% projection). In other words, the financial results confirmed Defendants' prior statements were *true*. *See Roblox*, 2025 WL 948124, at *4 (no loss causation based on disappointing bookings numbers where "challenged statements were true when made"). Just because analysts may have concluded that e.l.f.'s *forward-looking* guidance for the next quarters was disappointing, Opp. at 24, e.l.f.'s adjustment of guidance to inform the market about what it expected for the future did not reveal any information to the market establishing "that any of the company's prior statements" were false. *Roblox*, 2025 WL 948124, at *4; *see also Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735, 769-70 (D. Ariz. 2022); *Lexar*, 2005 WL 1566534, at *3 (securities laws do not protect against "stock market digest[ing] a new forecast").

*Second*, Plaintiffs argue loss causation is shown through a materialization-of-the-risk theory. Opp. at 25. But they admit that the Ninth Circuit has not adopted that theory, *id*., so the Court should "not analyze Plaintiffs' materialization of risk arguments." *Cement Masons & Plasterers Loc. No. 502 Pension Fund v. Inmode Ltd.*, 2025 WL 2658224, at *12 (C.D. Cal. Sept. 12, 2025). But even if the theory was viable, Plaintiffs do not point to any *undisclosed* risk that materialized. Opp. at 23-25. Nor can they. e.l.f. "consistently updated investors on its future projections (which it met), while consistently warning investors throughout the Class Period that past growth was not indicative of the future, because consumer demand could change at any time." Mot. at 25 (citing Ex. 7 at 22, 31-32, 35-36, 39).

## III. CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss.

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 5:25-CV-02316-EKL

Dated: November 19, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ *Colleen C. Smith*
    Michele D. Johnson (Bar No. 198298)
    *michele.johnson@lw.com*
    650 Town Center Drive, 20th Floor
    Costa Mesa, California 92626
    Telephone: +1.714.540.1235

    Colleen C. Smith (Bar No. 231216)
    *colleen.smith@lw.com*
    12670 High Bluff Drive
    San Diego, California 92130
    Telephone: +1.858.523.5400

    Eric R. Swibel (*pro hac vice*)
    *eric.swibel@lw.com*
    330 North Wabash Avenue, Suite 2800
    Chicago, Illinois 60611
    Telephone: +1.312.876.7700

    Whitney B. Weber (Bar No. 281160)
    *whitney.weber@lw.com*
    Daniel R. Gherardi (Bar No. 317771)
    *daniel.gherardi@lw.com*
    505 Montgomery Street, Suite 2000
    San Francisco, California 94111
    Telephone: +1.415.391.0600

    *Attorneys for Defendants e.l.f. Beauty, Inc.,*
    *Tarang P. Amin, and Mandy J. Fields*