# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD R. WESTON, et al.,

Plaintiffs,

v.

DOCUSIGN, INC., et al.,

Defendants.

Case No.  22-cv-00824-VC

**ORDER GRANTING THE MOTION TO DISMISS**

Re: Dkt. No. 279

The motion to dismiss is granted. This order assumes that the reader is familiar with the allegations in the complaint, the documents relied on by the complaint, the applicable legal standards, and the arguments made by both parties.

This case was filed in 2022, and an earlier motion to dismiss was already adjudicated and denied. Dkt. No. 88. The case proceeded to discovery, and the previously assigned judge certified a class. Dkt. No. 158. Subsequently, the defendants sent a Rule 11 letter to the plaintiffs asserting that the complaint's description of the allegations of two confidential witnesses was not accurate. Dkt. No. 230 at 2. It's not clear whether the confidential witnesses recanted their allegations or whether the complaint misrepresented what the witnesses said in the first place, but at any rate, the parties agreed that class counsel would file an amended complaint that would exclude any description of the allegations of those two confidential witnesses, and that the defendants could move to dismiss it. Dkt. 230 at 4. The plaintiffs then filed a 401-page amended complaint, but after the Court encouraged them to streamline it, they filed the amended complaint that is now the subject of this motion to dismiss. The amended complaint removes all reference to confidential witness allegations and adds a lot of new factual allegations based on

internal documents that the plaintiffs obtained in discovery. The defendants' motion to dismiss contends that the complaint misrepresents many of those internal documents. In light of the earlier issues relating to confidential witnesses and indications that at least some of the internal documents are misrepresented in the amended complaint, the Court invited the parties to file supplemental briefs to address and produce certain internal documents cited in the complaint that appear most relevant to the plaintiffs' allegations of falsity. This ruling on the motion to dismiss follows the Court's review of the supplemental briefs and the accompanying internal documents.[1]

*eSignature Demand Statements*. The complaint alleges, in essence, that the defendants made a series of public statements that the success of Docusign's eSignature product was not limited to the COVID era because customers had discovered how useful the product was and were renewing and expanding their Docusign contracts instead of returning to pen and paper signatures. But internally, the complaint alleges, people were raising alarms that demand was slowing down and customers were increasingly failing to renew their contracts. The complaint is written in a way that makes it difficult to link the public statements to allegations about what was happening internally that would allow a reader to conclude that the statements were false. And a review of the internal documents makes clear that many of those documents are described in a misleading way in the complaint. To give just a couple examples, Paragraph 136 alleges that in May and June 2021, senior Docusign leaders were talking about the need to "level set on the new reality" and "'tighten up the story' on churn." But the referenced documents were talking about problems moving people from free trials to actually buying the product, not about problems with customer churn. Paragraph 155 alleges that in June 2021 Smith was talking about raising

---

[1] The Court takes judicial notice of the internal documents and public statement documents filed by the defendants and plaintiffs only to the extent that they were incorporated into the complaint by reference. The Court takes judicial notice of those documents only for purposes of determining whether the plaintiffs adequately alleged falsity and scienter. To the extent the defendants submitted documents to dispute the factual allegations in the complaint, the Court did not consider any documents for that purpose. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (2018).

"sirens" on Commercial churn, but the full document shows that Smith was saying that he'd seen data *rebutting* the churn sirens he'd previously raised. Frankly, these misrepresentations would probably justify dismissal of the complaint without further analysis. But in any event, this ruling will only discuss colorable allegations of falsity that do not involve the mischaracterization of internal documents relied on in the complaint.

There is one public statement for which falsity is adequately pled: Springer's statement on the September 2, 2021, earnings call that "we're not seeing any differences in churn rates in any meaningful way." ¶ 168. Paragraphs 156, 157, and 159 of the complaint allege that during the summer of 2021, people were talking internally about evidence of increasing customer churn (a metric that captures when customers downsize or don't renew their existing contracts) in certain portions of the business, including the Commercial segment and Financial Services and Financial Technology customers. The internal documents cited by the complaint back this up. A reader could conclude from those allegations that Springer's statement that there were no meaningful differences in churn was false.

But the complaint does not adequately allege that Springer acted with scienter. To plead scienter, plaintiffs need to allege facts that allow the reader to infer that Springer knew about the churn problems. And under the PSLRA, the allegations need to give rise to a "strong inference" of scienter—in other words, the inference that Springer knew about the churn problems needs to be at least as strong as an inference that he didn't know about the problems. The strong inference requirement can sometimes be satisfied by alleging information that is so important to a company's "core operations" that the company's leadership can be assumed to have known about it. *Webb v. Solarcity Corp.*, 884 F.3d 844, 854 (9th Cir. 2018); *Hayden v. Portola Pharmaceuticals, Inc.*, 2021 WL 3506614, at *5 (N.D. Cal. Aug. 10, 2021); *Union Asset Management Holding AG v. SanDisk LLC*, 2017 WL 3097184, at *2 (N.D. Cal. June 22, 2017). But the information alleged here doesn't rise to that level. The internal communications about customer churn are about churn in specific business segments, and there is no indication that they cover enough business segments to infer that customer churn had become a company-wide

3

problem that would be "absurd" for Springer not to know about. *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 988 (9th Cir. 2008).

Without being able to rely on the core operations inference, there is no "strong inference" that Springer knew about the churn problems. The emails about churn referenced in paragraphs 156 and 157 were sent to Alhadeff (who reported to Springer) and Willis and Smith (who reported to Alhadeff).[2] But the reader can't assume that Springer knew the information merely because Alhadeff and Alhadeff's reports knew it. Without any allegations that Springer had access to or was exposed to the information in those emails, the most reasonable inference is that he didn't know about it and therefore didn't know he was being misleading when he said they weren't seeing any meaningful differences in churn. *See South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008).

The only other eSignature statement worth addressing is Gaylor's September 8, 2021, statement that customers who came to Docusign with a COVID-specific use case that they no longer have are the "vast minority versus the majority of the motion." ¶ 172. The complaint alleges that an internal slide deck from May 2021 discussed the risks of customers with COVID-specific use cases not renewing. ¶ 124. But there is nothing in those allegations, or in the referenced slide deck, that would allow the reader to conclude that those risky one-time use customers were not in the "vast minority." Additionally, the slide deck was only discussing the risk of losing customers in the future, and it also discussed Docusign's strategies to identify additional use cases for the risky customers. The complaint therefore does not adequately allege that Gaylor's statement was false.

*Competition Statements*. The complaint alleges that the defendants misleadingly stated publicly that competition from Adobe wasn't a threat, while people were talking internally about losing their competitive edge due to Adobe's price pressure. But in each of the public statements, the defendants also acknowledged that Adobe tended to "compete on price" and argued that

---

[2] The emails referenced in paragraph 59 only involved Customer Success employees who do not seem to have reported directly to senior leadership.

4

despite Adobe's pricing pressure, Docusign retained its edge by selling a "premium" product. Dkt. Nos. 279-23, 279-11, 279-12, 279-19. The complaint does not plead facts that would make those statements untrue or misleading.

*CLM Statements*. Finally, the complaint alleges that the defendants misleadingly touted their CLM product as a key growth driver despite poor CLM sales. But the statements about CLM were forward-looking and accompanied by meaningful cautionary statements. *See* 15 U.S.C. § 78u-5(c)(1)(A). For example, Springer stated on the December 3, 2020, earnings call that he thought they were going to see customers ready to "reaccelerate with CLM" in the next few quarters, but he also stated on that same call that they had seen a slowing of CLM transactions during COVID. Dkt. No. 279-14. Nothing in the pleadings indicates that those statements were false or misleading.

Given the history of this case and all the problems with the current complaint that make it misleading and confusing, the Court concludes that further amendment would be futile. Accordingly, the motion to dismiss is granted, and the case is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: January 26, 2026

_____

VINCE CHHABRIA
United States District Judge